| UNITED STATES DISTRICT COURT | ECF |
| SOUTHERN DISTRICT OF NEW YORK | |

```
─────────────────────────────────────────── )
MASON TENDERS DISTRICT COUNCIL et al.,     )
                                           )     05 Civ. 1891 (RCC)
                    Plaintiffs,            )     04 Civ. 2427 (RCC)
                                           )
        - against -                        )
                                           )     MEMORANDUM
AURASH CONSTRUCTION CORP. and PARVIZ       )     & ORDER
ABRISHAMCHI,                               )
                                           )
                    Defendants.            )
                                           )
───────────────────────────────────────────
```

**RICHARD CONWAY CASEY, United States District Judge:**

The four-day trial of these consolidated matters—actions by union benefit funds Mason Tenders District Council et al. ("Plaintiffs") to collect unpaid benefit contributions from an employer, Aurash Construction Corp. ("Aurash"), and its president, Parviz Abrishamchi ("Abrishamchi")—began on November 7, 2005. The jury found that Abrishamchi was not liable to Plaintiffs, and Plaintiffs' claims against Abrishamchi were dismissed. The jury found that Aurash was liable to Plaintiffs, however, and rendered a verdict in favor of Plaintiffs as against Aurash in the amount of $63,000.00, representing unpaid contributions (including fringe-benefit contributions, dues checkoffs, and Political Action Committee contributions) due for the period June 14, 2001 through April 30, 2003 ("Unpaid Contributions"). Plaintiffs were granted leave to apply for attorney's fees and other statutory damages from Aurash under Employee Retirement Income Security Act ("ERISA") section 502(g)(2), 29 U.S.C. § 1132(g)(2), and now seek under that provision to have the judgment in the amount of $63,000.00 vacated and replaced by an amended judgment in an amount to include that Unpaid Contributions amount as well as interest, statutory damages, attorney's fees and costs of the action, and audit costs. For the following reasons,

Plaintiffs' application is **GRANTED** as modified in this memorandum. Plaintiffs are awarded $63,000.00 in Unpaid Contributions (as determined by the jury), as well as $8,394.46 in interest, $8,394.46 in statutory damages, $49,158.50 in attorney's fees and costs of the action, and $9,450.00 in audit fees, for a total of **$138,397.42**.

I.   DISCUSSION

ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2), dictates that, in an ERISA action such as this (i.e., an action by a fiduciary for or on behalf of a plan in which a judgment in favor of the plan is awarded), the court shall award the prevailing plaintiff:

> (A)   the unpaid contributions,
> (B)   interest on the unpaid contributions,
> (C)   an amount equal to the greater of
>    (i)   interest on the unpaid contributions, or
>    (ii)  the liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)   such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

The total amount sought by Plaintiffs from Aurash under ERISA section 502(g)(2) is $150,109.42. In addition to the $63,000.00 in Unpaid Contributions already awarded by the jury, Plaintiffs seek from Aurash $8,394.46 in interest on the Unpaid Contributions under ERISA section 502(g)(2)(B); $8,394.46 in statutory damages under ERISA section 502(g)(2)(C)(i); $52,470.50 in attorney's fees and costs ($52,280.50 in attorney's and paralegal's fees and $190.00 in costs) under

ERISA section 502(g)(2)(D); and $17,850.00 in audit fees under ERISA section 502(g)(2)(E). See 29 U.S.C. § 1132(g)(2)(A)-(E).

**A.  Unpaid Contributions Under ERISA section 502(g)(2)(A)**

As an initial matter, Plaintiffs are entitled under ERISA to the jury-awarded $63,000.00 in Unpaid Contributions based upon the collective-bargaining agreement that existed between Plaintiffs and Aurash ("CBA"). See ERISA § 515, 29 U.S.C. § 1145 (requiring employers who are bound by collective-bargaining agreements to contribute to benefit plans in accordance with the terms of such agreements); id. § 502, 29 U.S.C. § 1132(a)(3) (granting the trustee of an employee-benefit plan the right to bring an action in federal district court to enforce an employer's duty to make contributions to the employee-benefit plan). Aurash does not contest this.

**B.  Interest on the Unpaid Contributions Under ERISA Section 502(g)(2)(B)**

Second, Plaintiffs are entitled to $8,394.46 in interest on the $63,000.00 in Unpaid Contributions.[1] An award of interest under ERISA section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), is mandatory in a case such as this. See Mason Tenders Dist. Council v. Envirowaste & Transcontractors, Inc., No. 98 Civ. 4040(DC), 1999 WL 370667, at *2 (June 7, 1999) ("Once it is determined that an employer has failed to make the required contributions, an award of interest [under ERISA section 502(g)(B)] is mandatory."). The $8,394.46 figure is calculated, based on the $63,000.00 in Unpaid Contributions, at the rate prescribed by 26 U.S.C. § 6621 from the date that payments first came due under the CBA. See id.

---

[1] The Court finds Aurash's argument that Plaintiffs' claim for monies under § 1132(g)(2) was subsumed by the jury's decision such that it cannot be "revisited" by the Court (Opp'n at 3-4) to be unavailing. The jury was not instructed by the Court to consider or calculate interest on any principal amounts awarded to Plaintiffs. Nor was the jury instructed to consider or calculate statutory damages, attorney's fees or costs of the action, or audit costs.

**C.     Statutory Damages on the Unpaid Contributions Under ERISA Section 502(g)(2)(C)(i)**

Third, Plaintiffs are entitled to $8,394.46 in statutory damages on the $63,000.00 of Unpaid Contributions.  An award of a statutory penalty under ERISA section 502(g)(2)(C)(i), 29 U.S.C. § 1132(g)(2)(C)(i), is mandatory in this case.  See  Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995).  The $8,394.46 figure is calculated, based on the $63,000.00 in Unpaid Contributions, at the rate prescribed by 26 U.S.C. § 6621 from the date that payments first came due under the CBA.  See Envirowaste, 1999 WL 370667, at *2.

**D.     Attorney's Fees and Costs of the Action Under ERISA Section 502(g)(2)(D)**

Fourth, Plaintiffs are entitled to an award of attorney's fees and costs.  When a plaintiff prevails in an ERISA action for unpaid contributions, ERISA section 502(g)(2)(D) mandates an award of "reasonable attorney's fees and costs of the action, to be paid by the defendant."  See 29 U.S.C. § 1132(g)(2)(D); Iron Workers, 68 F.3d at 1506 (noting that "the award of attorney fees [is] mandatory for suits involving delinquent employers" under ERISA section 502(g)(2)(D)).

Although an award of attorney's fees is mandatory in this case, "the amount of any such award rests within the Court's discretion."  See Envirowaste, 1999 WL 370667, at *2; see also Iron Workers, 68 F.3d at 1506.  In calculating "reasonable" attorney's fees awarded under ERISA section 502(g)(2)(D), courts use a "lodestar" figure as a starting point, see Envirowaste at *2, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved, see Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The Court should exclude from the initial fee calculation hours that were not "reasonably expended," including "excessive, redundant, or otherwise unnecessary" hours and hours dedicated

4

to severable unsuccessful claims. Hensley, 461 U.S. at 434-35; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). As a general rule, "hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." Hensley, 461 U.S. at 434 (quotation marks, citation, and emphasis omitted).

Plaintiffs seek $52,280.50 in attorney's and paralegal's fees for the case against Aurash. Plaintiffs have submitted to the Court, as part of their application for costs and fees, affidavits setting forth attorney services expended toward the litigation as against Aurash (not including costs and fees expended solely toward the litigation of 05 Civ. 1891, the case against Abrishamchi) as well as contemporaneous time records. See New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983) (stating that contemporaneous time records specifying "for each attorney, the date, the hours expended, and the nature of the work done" must support an application for attorney's fees). Plaintiffs' application for legal fees is detailed and provides sufficient information for the Court to determine the reasonableness of the amount sought. Further, the sum of the services rendered as set forth in Plaintiffs' affidavits totals $52,280.50 as sought.[2]

The Court deducts $3,312.00 from the $52,280.50 sought by Plaintiffs as duplicative because 20.7 hours' worth of January 2005 submissions, which were billed at a rate of $160.00 per hour, were listed twice. (See Adler Second Aff. in Support of Am. J. at 9 (conceding that these hours were

---

[2] According to Plaintiffs' affidavits, the application for legal fees is based on 38.2 hours of work by a partner at an hourly rate of $225.00 ($8,595.00 total), 286.7 hours of work by associates at an hourly rate of either $125.00 or $160.00 ($40,457.50 total), and 53.8 hours of paralegal work billed at an hourly rate of $60.00 ($3,228.00 total). (See Vollbrecht Aff. of Att'y Services and Ex. A-C; Elfenbein Aff. of Att'y Services and Ex. D; Adler Aff. of Att'y Services and Ex. E; Stein-Berman Aff. of Paralegal's Services and Ex. F; Kallos Aff. of Paralegal's Services and Ex. G; Paklans Aff. of Paralegal's Services and Ex. H.)

accidentally listed twice).) This reduces the fee amount to $48,968.50.

The Court has thoroughly reviewed Plaintiffs' affidavits and time sheets and is satisfied that the remaining hours for which Plaintiffs' counsel seeks remuneration were reasonably spent in pursuit of issues where Plaintiffs were successful. The Court further finds that, based on prior awards in ERISA cases and on its own experience, the hourly rates charged by Plaintiffs' counsel and their staff are both reasonable and customary for attorneys and paralegal staff practicing in federal court in Manhattan. See Perishable Food Indus. Pension Fund v. American Banana Co., No. 01 Civ. 1922 (LMM)(RLE), 2003 WL 21542316, at *5 (S.D.N.Y. July 1, 2003) (collecting cases finding hourly rates from $160.00 to $300.00 to be reasonable and customary in this District). Accordingly, the lodestar for attorney's and paralegal's fees totals $48,968.50.

Having determined the lodestar, the Court next considers whether that amount should be adjusted upward or downward. See Hensley, 461 U.S. at 434. Although there is a "strong presumption" that the lodestar figure represents a reasonable fee, Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986), a district court may adjust the lodestar figure "based on several factors, including in particular the 'results obtained,'" Quaratino, 166 F.3d at 425 (quoting Hensley, 461 U.S. at 434). The Court need not consider adjusting the figure upward because Plaintiffs do not argue that the lodestar amount should be enhanced. Aurash argues that the lodestar amount should be adjusted downward on the ground that the results achieved at trial—which Aurash characterizes as "poor" (Opp'n at 3) on the ground that Plaintiffs could have settled the claim prior to trial for $10,000.00 and generally did not obtain as much from Aurash as

6

they originally sought—cannot justify so much attorney time.[3] Aurash, however, has failed to meet its burden in reducing the lodestar figure. See Kapoor v. Rosenthal, 269 F. Supp. 2d 408, 412 (S.D.N.Y. 2003) ("When a party advocates that the lodestar amount be reduced, he or she bears the burden of establishing that a reduction is justified." (citing U.S. Football League v. Nat'l Football League, 887 F.2d 408, 413 (2d Cir. 1989))). Success in an ERISA action is not measured solely by the amount of damages awarded, and there is no requirement that the amount of an award of attorney's fees under ERISA section 502(g)(2)(D) be proportional to the amount of damages awarded. See King v. JCS Enters., Inc., 325 F. Supp. 2d 162, 168 (E.D.N.Y. 2004) (holding that the level of success met by an ERISA plaintiff for lodestar purposes was not diminished by the fact that they collected only a quarter of what they originally sought); see also Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995) (holding that, in ERISA cases, "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages"); Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1355 (9th Cir. 1990) (refusing to bar fee collection by an ERISA plaintiff where only a few hours of delinquent contributions were due). Thus, the lodestar requires no adjustment.

Plaintiffs have also submitted evidence of the costs incurred in the 04 Civ. 2427 action (the case against Aurash), specifically filing and service fees, which total $190.00. These costs are

---

[3] Aurash also argues that it should not be made to pay money under ERISA section 502(g)(2) because it lacks funds. Although "the ability of the offending party to satisfy an award of attorney's fees" is a factor which must be considered in awarding discretionary attorney's fees under ERISA section 502(g)(1), see Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987), this application is one for mandatory attorney's fees under ERISA section 502(g)(2) such that Aurash's lack-of-funds argument is without merit.

reasonable and customary and Plaintiffs shall be awarded them. Plaintiffs are therefore awarded a total of $49,158.50 in attorney's fees and costs under ERISA section 502(g)(2)(D).

**E.     Audit Costs Under ERISA Section 502(g)(2)(E)**

Finally, Plaintiffs are entitled to an award of audit costs. ERISA section 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), "gives the Court the authority to award any legal or equitable relief it deems appropriate." See Envirowaste, 1999 WL 370667, at *2 (awarding audit fees under ERISA section 502(g)(2)(E)). The CBA provides that Aurash "shall bear the imputed cost of [an] audit" of the company's books and records if after that audit Aurash "is found to be substantially delinquent . . . in the payment of fringe benefit contributions to the Trust Funds." CBA § 16(c). The imputed audit cost is calculated by dividing the total audited deficiency by 150 and multiplying the result by the number of months audited. Id. The imputed cost of the audit, as calculated under this formula for the period June 14, 2001 through April 30, 2003, is $9,450.00.[4] Accordingly, Plaintiffs are awarded $9,450.00 in audit costs under ERISA section 502(g)(2)(E).

**II.     CONCLUSION**

For the foregoing reasons, Plaintiffs' application for attorney's fees and other statutory damages under ERISA section 502(g)(2), 29 U.S.C. § 1132(g)(2), is **GRANTED** as modified in this memorandum. The Clerk of the Court is directed to vacate the November 23, 2005 amended judgment against Aurash in the amount of $63,000.00, and further directed to enter a second

---

[4] The $17,850.00 in audit costs sought by Plaintiffs was based on the period October 14, 1999 through April 30, 2003. (See Vollbrecht Aff. in Support of Am. J. at 3.) Because the jury awarded Unpaid Contributions only for the period June 14, 2001 through April 30, 2003, however, and Aurash was not found to be delinquent under the CBA for the period October 14, 1999 to June 13, 2001, the Court awards audit costs based solely on the period June 14, 2001 through April 30, 2003. Plaintiffs concede that $9,450.00 is the correct amount for imputed audit fees calculated solely for that period. (See Adler Second Aff. in Support of Am. J. at 11.)

amended judgment in favor of Plaintiffs as against Aurash in the amount of **$138,397.42**—representing $63,000.00 in Unpaid Contributions, $8,394.46 in interest, $8,394.46 in statutory damages, $49,158.50 in attorney's fees and costs of the action, and $9,450.00 in audit fees—and to close this case.

**So Ordered:** New York, New York
March 14, 2006

*Richard Conway Casey*

**Richard Conway Casey, U.S.D.J.**